United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 13, 2024
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-33948 |
| FIELDWOOD ENERGY LLC, *et al.*, | § | |
| | § | CHAPTER 11 |
| Debtors. | § | |
| | § | |
| FIELDWOOD ENERGY III LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 22-3251 |
| | § | |
| STAR MEASUREMENT SALES AND SERVICE, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

This case involves a $25,136.96 payment made from Fieldwood Energy III LLC (Fieldwood) to Star Measurement Sales and Services, Inc. (Star) during the 90-day preference period. Fieldwood moves for summary judgment, arguing that there is no genuine issue of material fact that precludes a finding that the payment was an avoidable preference under 11 U.S.C. § 547. Star does not contest that the transfer meets the elements of a preference under § 547(b). Star moves for summary judgment on various affirmative defenses asserted under § 547(c). The transfer is a preference under § 547(b) and no affirmative defenses apply. The transfer is avoided.

## BACKGROUND

Fieldwood operates an energy business focused on oil and gas exploration and production in the Gulf of Mexico. On August 3rd and 4th, 2020, the Fieldwood entities filed Chapter 11 bankruptcy petitions.

On June 25, 2021, the Court confirmed Fieldwood's eighth amended joint chapter 11 plan of reorganization. Case No. 20-33948, ECF No. 1751. The plan had an effective date of August 27, 2021. Case No. 20-33948, ECF No. 2016. As part of the chapter 11 plan, Fieldwood's post-effective date debtors are authorized to prosecute and settle all causes of action retained on behalf of the Fieldwood entities. Case No. 20-33948, ECF No. 1562-1 at 139.

Star is a manufacturer that regularly contracts with energy pipeline companies and production operators to fabricate and manufacture equipment designed to measure the flow of natural gas and oil transported through pipelines in the Gulf of Mexico. ECF No. 25-7 at 2. Fieldwood had a longstanding business relationship with Star. ECF No. 25-4 at 14–31. In 2019, Star generated a sales estimate for custom fabrication of measurement equipment for a production well operated by Fieldwood. ECF No. 26-2 at 28. Star generated a $25,136.96 invoice for the equipment on January 2, 2020. ECF No. 26-2 at 36–27. Star also generated a $425.00 additional invoice for freight, but Fieldwood does not claim a preference payment of this amount. ECF No. 26-2 at 35; ECF No. 1 at 10. The equipment was shipped on January 2, 2020. ECF No. 26-2 at 39–40. Fieldwood paid the $25,136.96 invoice to Star on June 2, 2020. ECF No. 26-2 at 4, 36.

Fieldwood filed this adversary proceeding on August 3, 2022, asserting causes of action for avoidable preference and avoidable fraudulent transfer. ECF No. 1 at 10–12. On September 27, 2022, Fieldwood filed a notice of dismissal of its fraudulent transfer cause of action. ECF No. 10 at 2. Fieldwood asserts only a cause of action for the avoidance of the $25,136.96 payment as a preference under 11 U.S.C. § 547(b). ECF No. 1 at 10–11. Star filed its answer to Fieldwood's

complaint on February 27, 2023, asserting affirmative defenses under § 547(c). ECF No. 18. Discovery in the adversary proceeding closed on August 30, 2023. ECF No. 13 at 1. Both parties have moved for summary judgment. ECF Nos. 25, 26.

There is no genuine issue of material fact that precludes a finding that the $25,136.96 payment is a preference under § 547(b). The payment is not saved by any of the affirmative defenses asserted by Star. The transfer will be avoided.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact means that evidence is such that a reasonable fact finder "could return a verdict for the nonmoving party." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). It is the movant's burden to establish that no genuine issue of material fact exists. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citing *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005)). A party asserting that a fact cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). If the movant establishes "the absence of evidence supporting an essential element of the non-

movant's case," the burden shifts to the non-movant to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326 (citing *Condrey*, 429 F.3d at 562).

In ruling on a motion for summary judgment, a court should view the facts and evidence in light most favorable to the non-moving party. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014). Nevertheless, the court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Env't. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015). The Court need only consider the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Aubrey v. Sch. Bd. of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

## DISCUSSION

### I.  STAR'S EVIDENTIARY OBJECTIONS ARE OVERRULED

Star objects to exhibits B, C, and D offered in Fieldwood's motion for summary judgment. Star also objects to the David Dunn's declaration supporting Fieldwood's summary judgment motion.

Under Federal Rule of Civil Procedure 56(c)(1),

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of

a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Rule 56(c)(2) allows a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Rule 56 applies in adversary proceedings under Federal Rule of Bankruptcy Procedure 7056.

### A. Fieldwood's Exhibits B, C, and D Are Considered at the Summary Judgment Stage of This Adversary Proceeding

Star argues exhibits B, C, and D of Fieldwood's motion for summary judgment were generated by the law firm representing Fieldwood (Ask LLP), and accordingly, they "(A) were not kept in the usual and ordinary scope of business of Fieldwood, (B) have not been authenticated as a Fieldwood business record, and (C) do not generally meet the admissibility requirements of FRCP 56." ECF No. 27 at 2.

Star uses an incorrect standard to evaluate the summary judgment record. The precise documents attached to a motion for summary judgment need not be in admissible form. The Fifth Circuit has repeatedly held that the standard does not require a declaration itself to be admissible. The test is whether the declaration supporting the motion "set[s] out facts that would be admissible in evidence." Rule 56(c)(4). "At the summary judgment stage, evidence relied upon need not be presented in admissible form, but it must be 'capable of being "presented in a form that would be admissible in evidence."'" *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018) (quoting Rule 56(c)(2)).

Exhibit B of Fieldwood's motion for summary judgment is a spreadsheet containing details about the transfer at issue, including the transfer number, transfer amount, transfer date, clear date, invoice number, invoice amount, invoice date, and the number of days between the invoice date and date of transfer. ECF No. 26-3 at 1. Exhibit C contains this same information for historical transactions between

Fieldwood and Star. ECF No. 26-4 at 1. Exhibit D is an analysis spreadsheet prepared by Ask LLP listing the distributions of time between invoice and delivery for the transfer at issue and historical payments between Fieldwood and Star. ECF No. 26-5 at 1.

The data contained in Exhibits B, C, and D is undisputed. The data is readily available in a non-compiled format through invoices and records maintained by Star and Fieldwood. *See, e.g.*, ECF No. 26-2 at 36; ECF No. 25-7 at 24–41. The invoices and records, and their underlying data, are relied on by both Fieldwood and Star in their motions for summary judgment. The exhibits merely provide the data in a compiled format to assist the Court's analysis in comparing the transfer at issue with historical transactions between Fieldwood and Star. The prepared compilations themselves may be admissible as data compilations under Fed. R. Evid. 1006. Even if not admissible on this basis, the underlying data can be authenticated and admitted under the business records exception to the rule against hearsay. *See* Fed. R. Evid. 901(a), 803(6).

Star's objections to exhibits B, C, and D of Fieldwood's motion for summary judgment are overruled.

### B. Dunn's Declaration Is Admissible

Star objects to Fieldwood's use of the declaration of David Dunn on multiple grounds. Star claims that the declaration references "'a review of the Debtors books and records' but does not actually state that David Dunn personally made the examination of the records." ECF No. 27 at 3. Star asserts that Dunn admits he delegated to his counsel and other employed professionals duties relating to maintaining the books and records of Fieldwood's post-effective date debtor entities, thereby indicating that Dunn did not make his declaration with personal knowledge. ECF No. 27 at 3. Star also objects to any reference to and reliance on exhibits B, C, and D in the declaration. ECF No. 27 at 3. Star alleges that, because Dunn relied on exhibits prepared by counsel in making his declaration instead of actual business records, his

declaration relies on inadmissible hearsay and is not based upon personal knowledge. ECF No. 27 at 3–4.

Under Federal Rule of Civil Procedure 56(c)(4), "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." In the summary judgment context, courts may rely on declarations "where the affiants' 'personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matter to which they swore.'" *DIRECTV, Inc. v. Budden*, 420 F.3d 521 (5th Cir. 2005) (quoting *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir.1990)); *see also BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, No. H-13-3046, 2016 WL 1387907, at * 2 (S.D. Tex. Apr. 8, 2016) ("[W]here an affiant has not participated in the matters to which he swore, he may still 'glean personal knowledge of the practices of that organization by participating in those practices or reviewing the organization's records.'").

David Dunn testified in his declaration that he is the plan administrator and serves as the "sole officer, director, or manager of each Post-Effective Date Debtor . . . ." ECF No. 26-1 at 3. He testified that he is "the main person responsible for, among other things, a) maintaining the books and records of the Post-Effective Date Debtors and b) prosecuting or electing not to prosecute all causes of action retained by the Debtors pursuant to the Plan." ECF No. 26-1 at 3. He testified that, in connection with his responsibilities, he is "generally familiar with the Debtors' books and records which reflect, among other things, payments made on debts incurred prior to the petition date." ECF No. 26-1 at 3. He also testified that he and his employed professionals conducted due diligence prior to filing the complaint, which included the review of various transaction data. ECF No. 26-1 at 4–5.

Dunn's testimony is sufficient to establish that it is based upon his knowledge of Fieldwood's records and knowledge gleaned from his

employed professionals. This practice is permitted by virtue of his managing role of the Fieldwood entities. Knowledge formed through review of exhibits B, C, and D prepared by his counsel is permitted for this same reason. The testimony also reflects that Dunn did not exclusively rely on these exhibits. For purposes of summary judgment, Dunn's testimony is sufficient to establish his personal knowledge of facts contained in his declaration.

Star's objection to Dunn's declaration is overruled.

## II. FIELDWOOD'S PAYMENT TO STAR IS AN AVOIDABLE PREFERENCE UNDER § 547(B)

Under 11 U.S.C. § 547(b), to avoid the $25,136.96 transfer as a preference, Fieldwood must demonstrate that the transfer was

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
  (A) on or within 90 days before the date of the filing of the petition; or
  (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of the transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
  (A) the case were a case under chapter 7 of this title;
  (B) the transfer had not been made; and
  (C) such credit received payment of such debt to the extent provided by the provisions of this title.

The trustee bears the burden of proving the elements of a preference under subsection (b). *Id.* § 547(g).

To avoid a transfer in property, "it is essential that the debtor have an interest in the property transferred so that the estate is thereby diminished." *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1355–56 (5th Cir. 1986) (quoting *Genova v. Rivera Funeral Home (In re Castillo)*, 39 B.R. 45, 46 (Bankr. D. Colo. 1984)). The transfer at issue was made by check from Fieldwood to Star. ECF No. 26-1 at 5; ECF No. 26-2 at 5. Star does not contest that the transfer was of Fieldwood's property.

With respect to the first element, Star manufactured and delivered goods to Fieldwood, which Fieldwood was obligated to pay for. *See In re Black Elk Energy Offshore Operations, LLC*, 605 B.R. 138, 148 (Bankr. S.D. Tex. 2019). As a result, Star held a claim against Fieldwood prior to the petition date, which is sufficient to establish Star as a creditor under 11 U.S.C. § 101(10). *See id.* Fieldwood made the transfer directly to Star. ECF No. 26-2 at 5, 36–38. The transfer extinguished or reduced Fieldwood's debt owed to Star stemming from the transaction. This element is satisfied.

With respect to the second element, "A debt is 'antecedent' for purposes of § 547(b) if it was incurred before the alleged preferential transfer." *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)*, 416 F.3d 394, 399 (5th Cir. 2005). The transfer was made pursuant to an invoice issued by Star prior to the date of transfer. ECF No. 26-1 at 5; ECF No. 26-2 at 5, 36–37. This invoice was for payment by Fieldwood of manufacturing equipment produced by Star. ECF No. 25-5 at 2. This fact satisfies the element.

With respect to the third element, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." § 547(f). "The party seeking to rebut the presumption must introduce some evidence to show that the debtor was solvent *at the time of the transfer*; mere speculative evidence of solvency is not enough." *Gasmark Ltd. Liquidating Tr. v. Louis Dreyfus Nat. Gas Corp.*, 158 F.3d 312, 315 (5th Cir. 1998). The transfer was

made within 90-days of the petition date. Star offers no evidence to rebut the presumption of insolvency. This element is satisfied.

With respect to the fourth element, Star is not an insider of Fieldwood. The ninety-day timeframe applies. *See* § 547(b)(4). Since the date of filing occurred on August 3rd and 4th, 2020, the preference period is May 5, 2020, through August 3, 2020. "For the purposes of payment by ordinary check, . . . a 'transfer' as defined by [11 U.S.C. § 101(54)] occurs on the date of honor, and not before." *Barnhill v. Johnson*, 503 U.S. 393, 400 (1992). The invoice was paid on June 2, 2020. ECF No. 26-2 at 36–37. June 2, 2020 is well within the preference period. Star admits this fact. ECF No. 26-2 at 5. This element is satisfied.

"The final element requires the Plan Administrator 'to present a hypothetical Chapter 7 distribution analysis as of the date the bankruptcy petition was filed.'" *In re Emas Chiyoda Subsea Ltd.*, No. 17-31146, 2020 WL 1696105, at *6 (Bankr. S.D. Tex. Apr. 6, 2020) (quoting *Moser v. Bank of Tyler (In re Loggins)*, 513 B.R. 682, 707 (Bankr. E.D. Tex. 2014)). The Court must determine whether the creditor obtained more pursuant to the transfer than the creditor would have received in a hypothetical chapter 7 distribution, had the transfer not been made. § 547(b)(5). "The net result is that, as long as the distribution in bankruptcy is less than one hundred percent, any payment on account to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made." *In re Emas Chiyoda Subsea Ltd.*, 2020 WL 1696105, at *6 (quoting *Moses*, 513 B.R. at 707). "Thus, the relevant inquiry for this Court is whether [creditor] would have received a 100 percent payout in a Chapter 7 liquidation." *Id.* (alteration in original) (quoting *Moses*, 513 B.R. at 707).

Fieldwood's schedules indicate its liabilities exceed its assets. Case No. 20-33948, ECF No. 429 at 462. The Plan Administrator testified in his declaration that, although Fieldwood has not reconciled its claims, "the combination of secured and unsecured claims is expected

to be far greater than available assets." ECF No. 26-1 at 6. He also testified that the distribution to general unsecured creditors will be "far less than 100%." ECF No. 26-1 at 6. Star does not hold a perfected security interest in Fieldwood's collateral. ECF No. 26-2 at 2. As a general unsecured creditor, Star would not have received a 100% payout in a chapter 7 liquidation. Any payment Star received during the preference period would have allowed it to recover more than it would in a chapter 7 proceeding, had the transfer not been made. The final element is met.

Fieldwood has met its burden of demonstrating there is no genuine issue of material fact as to the presence of the elements of a preferential transfer under § 547(b).

### III. NO AFFIRMATIVE DEFENSES APPLY UNDER § 547(C)

Star moves for summary judgment on affirmative defenses asserted under § 547(c). Star asserts the contemporaneous exchange defense under § 547(c)(1), the ordinary course of business defense under § 547(c)(2), and the subsequent advance defense under § 547(c)(4). ECF No. 25 at 1–9.

#### A. The Contemporaneous Exchange Defense Is Inapplicable

Under § 547(c)(1), the trustee may not avoid a preferential transfer "to the extent that such transfer was—(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." "The purpose of the contemporaneous exchange exception is to protect transactions that do not result in a diminution of the bankruptcy estate." *In re Bison Bldg. Holdings, Inc.*, 473 B.R. 168, 175 (Bankr. S.D. Tex. 2012) (citing *Velde v. Kirsche*, 543 F.3d 469, 472 (8th Cir. 2008)). "If new value is given, a contemporaneous exchange does not diminish the estate." *Id.* (citing *Velde*, 543 F.3d at 472). "To defend itself under § 547(c)(1), a creditor must demonstrate 'intent, contemporaneousness

and new value.'" *Id.* (quoting *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 239 F.3d 365, 2000 WL 1741550, at *3 (5th Cir.2000)). Intent, contemporaneousness, and new value are a question of fact. *Id.*

The affirmative defense only applies if the exchange was, in fact, contemporaneous. 547(c)(1)(B) is unambiguous. No matter the reasons or the parties' intentions, the transaction must have been "in fact a substantially contemporaneous exchange." *Id.* There is no factual basis that supports that this exchange was, in fact, contemporaneous.

The significant delay between invoice and payment precludes a finding that the transfer was substantially contemporaneous. The invoice date for the manufactured equipment (and the date of shipment) was January 2, 2020. ECF No. 26-2 at 36–37, 39–40. Fieldwood paid the invoice on June 2, 2020. ECF No. 26-2 at 4, 36. Although "substantially contemporaneous" must be considered in its totality, a 152-day gap between invoice and payment exceeds the bounds of the exception. *See Bison*, 473 B.R. at 176 (finding that thirty to forty-five date delays between invoices and payments suggest a lack of substantial contemporaneousness); *In re Truland Grp.*, Inc., 604 B.R. 258, 267 (E.D. Va. 2019) (holding twenty-three-day and forty-five-day delays between supplying equipment and payment as not substantially contemporaneous).

The contemporaneous exchange for new value exception is inapplicable.

### B.     The Ordinary Course Defense Is Inapplicable

Section 547(c)(2) provides that the trustee may not avoid a preferential transfer

> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—

> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms . . . .

As amended by BAPCPA, the section provides for separate defenses, the ordinary course of business defense and the ordinary business terms defense. *See Hutson v. Branch Banking & Trust Co. (In re Nat'l Gas Distrib., LLC)*, 346 B.R. 394, 396 (Bankr. E.D.N.C. 2006).

### *(1)   Ordinary Course of Business Defense*

To determine whether a debt was incurred and paid in the ordinary course,

> [T]ypically, courts look to the length of time the parties were engaged in the transaction at issue, whether the amount or form of tender differed from past practices, whether the creditor engaged in any unusual collection activity, and the circumstances under which the payment was made (i.e. whether the creditor took advantage of the debtor's weak financial condition).

*Bison*, 473 B.R. at 177 (quoting *Compton v. Plains Marketing, LP (In re Tri-Union Dev. Corp.)*, 349 B.R. 145, 150 (Bankr. S.D. Tex. 2006)).

The transfer initially appears in all respects to a part of an ordinary business dealing between Fieldwood and Star. Star's evidence indicates that the transaction was negotiated and entered into within the regular scope of the parties' business relationship. The transaction was contemplated after a communication between an employee of Fieldwood and an employee of American Midstream, an oil pipeline operator. ECF No. 25-3 at 2–3; ECF No. 25-5 at 3. Fieldwood and American Midstream determined the need for equipment to measure to flow of hydrocarbons to and from Fieldwood's production platform through American Midstream's pipeline. ECF No. 25-5 at 2–3.

Fieldwood and American Midstream agreed that Star would manufacture the equipment in accordance with agreed-upon specifications, since they had both done business with Star in the past. ECF No. 25-3 at 3; ECF No. 25-5 at 3. In October 2019, Star generated a sales order for the equipment, and it issued its invoice on January 2, 2020. ECF No. 25-4 at 7–9; ECF No. 25-7 at 3. Shipment of this equipment was also on January 2, 2020. ECF No. 25-4 at 10; ECF No. 25-7 at 4. Star claims that this evidence demonstrates that Fieldwood's preferential transfer to Star was incurred "in the ordinary course and scope of business, and made in accordance with standard business terms of one or both parties." ECF No. 25-2 at 5–6.

Although seemingly an ordinary transaction between Fieldwood and Star, Fieldwood's evidence demonstrates that the transaction was not done in the ordinary course. Notably, the invoice terms were "Net 30"[1]. ECF No. 24-4 at 37. Despite being on Net 30 terms, payment was made 152 days after the invoice date. *Id*. The delay between invoice and payment for the transaction at issue was significantly greater than historical dealings between the parties. In determining whether a payment is within the ordinary course, the Fifth Circuit has placed an emphasis on the timing of payments during the preference period as compared to historical transactions. *See Gasmark Ltd.*, 158 F.3d at 317 (comparing an eight-day late preferential payment with historical payments). "[T]he analysis focuses on the time within which the debtor ordinarily paid the creditor[] . . . and whether the timing of the payments during the 90-day period reflected 'some consistency' with that practice." *Id.* (quoting *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 497 (8th Cir. 1991)).

With respect to the preferential transaction, payment was made 152 days after invoice. ECF No. 26-2 at 4, 36–37, 39–40. In twelve prior transactions between Fieldwood and Star, Fieldwood paid its invoice between 21 and 119 days from the invoice date. ECF No. 26-4 at 1.

---

[1] Fieldwood argues that the terms were changed from Net 30 to COD. The Court assumes the facts in the light most favorable to Star. *See Plumhoff*, 572 U.S. at 768 (2014).

Around 81% of invoices were paid in 85 days or less, with an average payment of around 77 days from the invoice date. ECF No. 26-5 at 1. The preferential transfer was over a month later than the latest payment made in historical transactions, almost double the average payment time, and five times longer than the terms of the invoice. This significant delay in payment demonstrates material inconsistency with prior transactions. The Court cannot conclude the transaction was within the ordinary course of the parties' business.

The ordinary course of business defense does not apply.

### (2)   *Ordinary Business Terms Defense*

"The test of whether the payment arrangement conforms with ordinary business terms is 'objective'—it must be resolved by considering whether the arrangement falls within the outer boundaries of practices of the industry." *Bison*, 473 B.R. at 177 (citing *Gulf City Seafoods Inc. v. Ludwig Shrimp Co.*, 296 F.3d 363, 368–69 (5th Cir. 2002)). The analysis compares "the credit arrangements between other similarly situated debtors and creditors in the industry." *In re SGSM Acquisition Co., LLC*, 439 F.3d 233, 239 (5th Cir. 2006) (quoting *Gulf City*, 296 F.3d at 368).

Star has provided no evidence to support its claim that the transfer was made in accordance with ordinary business terms in Fieldwood's and Star's respective industries. To meet its burden, Star would have to provide evidence demonstrating that a 152-day difference between invoice date and payment date is consistent with industry practice. Star has failed to do so. Its argument rests on conclusory allegations. ECF No. 25-2 at 5; ECF No. 27 at 16.

Star has failed to meet its burden of providing evidence to create a genuine issue of material fact as to whether the preferential transfer fell within ordinary business terms. The defense is inapplicable.

### C. The Subsequent Advance Defense Is Inapplicable

Under § 547(c)(4), the trustee may not avoid a preferential transfer

> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
> > (C) not secured by an otherwise unavoidable security interest; and
> > (D) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor . . . .

The Fifth Circuit applies the transfer-by-transfer approach to the subsequent advance defense, which asks whether "(1) the new value was extended after the preferential transfer sought to be avoided, (2) the new value is not secured with an otherwise unavoidable security interest, and (3) the new value has not been repaid with an otherwise unavoidable transfer." *SGSM*, 439 F.3d at 241 (quoting *Laker v. Vallette (In re Toyota of Jefferson, Inc.)*, 14 F.3d 1088, 1093 n.2 (5th Cir.1994)).

Although Star claims the subsequent advance of new value defense, Star merely alleges that "the delivery of the custom manufactured equipment to Fieldwood Energy gave Fieldwood Energy new value to and for its benefit where Star Measurement was unprotected and its delivery of the equipment was not secured by an otherwise unavoidable security interest." ECF No. 25 at 5; ECF No. 25-2 at 5. There are no facts to suggest the extension of any new value after the preferential transfer.

The subsequent advance defense is inapplicable. No affirmative defenses shield the preferential transfer.

## IV. FIELDWOOD IS ENTITLED TO PREJUDGMENT INTEREST

Fieldwood seeks prejudgment interest. ECF No. 26-10 at 33. "It is well settled that bankruptcy courts have discretion to award prejudgment interest to a trustee who successfully avoids a preferential . . . transfer, from the time demand is made or an adversary proceeding is instituted, unless the amount of the contested payment was undetermined prior to the bankruptcy court's judgment." *Floyd v. Shindler (In re Rodriguez)*, 204 B.R. 510, 518 (Bankr. S.D. Tex. 1995), *aff'd*, 95 F.3d 54 (5th Cir. 1996). "Prejudgment interest may generally be awarded in cases where such an award serves to compensate the injured party and is otherwise equitable." *Id.* (quoting *Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers)*, 4 F.3d 1556, 1566 (10th Cir.1993)). Interest is awarded at the statutory rate set forth in 28 U.S.C. § 1961(a), accruing from the commencement date of the case. *Id.* (citing *Milchem, Inc. v. Fredman (In re Nucorp Energy, Inc.)*, 902 F.2d 729, 734 (9th Cir.1990)). Pursuant to § 1961(a), interest is calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System . . . ."

The preferential transfer is in the amount of $25,136.96. An award of prejudgment interest will compensate Fieldwood for the funds that were withheld from its estates. Fieldwood filed this adversary proceeding on August 3, 2022. The applicable prejudgment interest rate for the week preceding the date of filing was 3.01%. ECF No. 26-9 at 1 (weekly average 1-year constant maturity Treasury yield as of July 29, 2022); *see In re Innovative Commc'n Corp.*, No. ADV 08-3004, 2011 WL 3439291, at *49 (Bankr. D.V.I. Aug. 5, 2011), *aff'd*, No. ADV. 3:08-03004, 2013 WL 5432316 (D.V.I. Sept. 27, 2013) (calculating the prejudgment interest rate as the one-year Treasury maturity for the week proceeding the filing of the adversary proceeding).

Fieldwood is entitled to an award of pre-judgment interest of $1,227.91. Post-judgment interest accrues at a rate of 4.94% per annum from the date of entry of judgment.

## CONCLUSION

The Court will issue a final judgment in a separate order.

SIGNED 03/12/2024

Marvin Isgur
United States Bankruptcy Judge